IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATE B.,[1]                                                  No. 3:17-cv-00175-HZ

              Plaintiff,                        OPINION & ORDER

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

//

//

//

//

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Sara L. Gabin
Sara L. Gabin, P.C., Attorney at Law
14523 Westlake Drive
Lake Oswego, OR 97035

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Catherine Escobar
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kate B. brings this action for judicial review of the Commissioner's final decision denying her application Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, it is AFFIRMED and this case is DISMISSED.

## BACKGROUND

Plaintiff was born on March 2, 1975, and was thirty-seven years old on the alleged disability onset date, October 19, 2012. Tr. 32.[2] She earned a GED and has past relevant work experience as a mail carrier. Tr. 32, 42. Plaintiff's benefits application was denied initially on January 23, 2013, and upon reconsideration on July 19, 2013. Tr. 85–86, 98–99. A hearing was

---

[2] Citations to "Tr." refer to the administrative transcript record filed here as Docket No. 13.

held before ALJ Kelly Wilson on April 23, 2015. Tr. 40. ALJ Wilson issued a written decision on May 6, 2015, finding Plaintiff not disabled. Tr. 19–33. The Appeals Council declined review, rendering ALJ Wilson's decision the Commissioner's final decision that Plaintiff now challenges in this Court. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 18, 2012, the alleged disability onset date. Tr. 21.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease, a leg length discrepancy, and spina bifida occulta." Tr. 21.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23.

Before proceeding to step four, the ALJ determined that Plaintiff has the RFC to perform less than a full range of light work with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently in an eight-hour workday. She can stand and/or walk for six hours and sit for six hours in an eight-hour workday. She can frequently stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to vibrations.

Tr. 23.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 32.

At step five, the ALJ determined that, when considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 32. Specifically, Plaintiff would be able to perform the requirements of the following representative occupations: small products assembler; photocopy machine operator; and ticket taker. Tr. 32–33.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff's challenges to the Commissioner's decision are two-fold. First, she argues that the ALJ failed to give legally sufficient reasons for discounting Plaintiff's subjective symptom

testimony. Second, she argues that the ALJ improperly accorded less than full weight to the medical opinion of treating physician Dr. Robert Willey.

I.  **Plaintiff's Subjective Symptom Testimony**

Plaintiff challenges the ALJ's decision to reject her testimony regarding the intensity, persistence, and limiting effects of her symptoms. Tr. 27. As a preliminary matter, the parties dispute whether SSR 96-7p or SSR 16-3p govern the analysis for evaluating Plaintiff's subjective symptom testimony. SSR 96-7p sets forth factors for assessing the credibility of a plaintiff's symptom testimony. That ruling was superseded in March 2016 by SSR 16-3p which eliminated use of the term "credibility" and instead explained that "subjective symptom evaluation is not an examination of an individual's character[.]" SSR 16-3p; *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (quoting the same). SSR 16-3p was republished to clarify that it applies only to determinations and decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ's decision in this case was issued on May 6, 2015. Accordingly, the Court applies the analysis announced in SSR 96-7p which was in effect when ALJ Wilson issued her decision. When federal courts review the Commissioner's final decision, the Social Security Administration "expect[s] the court to review the final decision using the rules that were in effect at the time [it] issued the decision under review." *Id.* In any event, applying either analysis is not outcome determinative because the ALJ's decision to discount Plaintiff's subjective symptom testimony satisfies both rulings.

*A.  Applicable Law*

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's

testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted) (the ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms"). An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation.

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

7 - OPINION & ORDER

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (citations and internal quotation marks omitted).

### B.    *Plaintiff's Testimony*

Plaintiff testified that her back conditions prevent her from sustaining work activity. Her pain centers on the right side of her back but extends down through her right leg and into her foot. Tr. 51. Her average pain level with medication is three to four on a scale of ten. Tr. 51. She experienced a pain level of six at the administrative hearing. Tr. 51. Plaintiff further stated that she could probably sit for twenty minutes before having to stand and move around. Tr. 45–46. She explained: "If I'm walking a little bit I can do another 20, 30 minutes, but then I need to recline and have my legs up for at least half an hour, 45 minutes before" she could sit again depending on the type of seat. Tr. 46. When Plaintiff stands up after sitting, she claims she cannot remain standing still or bend over. Tr. 46. Plaintiff takes Vicodin every six hours and ibuprofen between doses. Tr. 47–48. Plaintiff testified that she could lift a gallon of milk, or

approximately eight pounds. Tr. 68. She stated she could garden for about ten minutes and she could pick up her grandson but it causes her pain. Tr. 70.

## C. The ALJ's Decision

The ALJ concluded that Plaintiff's symptom testimony was not entirely credible. The ALJ found that Plaintiff's testimony was internally inconsistent and contradicted by the treatment record and her activities of daily living.[3] Plaintiff's treatment records showed that her pain level was stabilized through only a conservative course of treatment including pain medication, use of a transcutaneous electrical nerve stimulation ("TENS") unit, and acupuncture treatment. Tr. 373–81. The ALJ pointed to medical records generated between October 2012 and May 2014 showing that Plaintiff's pain was stable and treatment allowed her to engage in more activities such as gardening, motorcycle riding, and performing community service. Such a positive response to conservative treatment consisting of acupuncture, anti-inflammatory medication, and a TENS unit belies Plaintiff's reports of disabling pain. *Tommasetti*, 533 F.3d 1035 at 1040. It was therefore permissible for the ALJ to infer that Plaintiff's conservative course of treatment was sufficient to discount her testimony regarding the severity of her impairments. *Id.* at 1039.

The ALJ also discounted Plaintiff's testimony based on her failure to follow Dr. Benton Davidson's medical recommendations. Tr. 27. As outlined above, an inadequately explained failure to follow prescribed treatment is a specific and legitimate reason for discounting a plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039. Dr. Benson took a nerve conduction study and electromyography ("EMG") of Plaintiff's lower right extremity on

---

[3] The ALJ also found that Plaintiff's prior conviction relating to a theft charge undermined her overall credibility. Tr. 29. A determination of overall credibility is appropriate under SSR 96-7p. The Court, however, does not rely on this particular finding to conclude that the ALJ properly discredited Plaintiff's testimony. As noted above, the ALJ provided sufficiently clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony.

September 6, 2013. Tr. 603. He commented that Plaintiff's examination showed the need for pelvic tilt and gait training through physical therapy. Tr. 603. The ALJ concluded that Plaintiff's failure "to pursue additional physical therapy for gait training" suggested that Plaintiff "did not believe her symptoms and limitations warranted additional treatment other than her regimen." Tr. 27. Plaintiff argues that she did not follow Dr. Davidson's advice because Dr. Willey stated on August 26, 2013, that Plaintiff had received no long-term benefit from two prior therapy sessions and that "the nerves may not be recoverable." Tr. 601. In that same treatment note, Dr. Willey referred Plaintiff for a nerve conduction study and EMG to determine the extent of the problem. Tr. 601. As discussed above, Dr. Davidson conducted those tests, which produced minimal findings, and recommended that Plaintiff engage in physical therapy. Tr. 603. Therefore, Plaintiff cannot rely on Dr. Willey's statements, which predate the nerve conduction study, to explain why Plaintiff did not follow Dr. Davidson's advice.

The ALJ found that objective medical findings and physical examinations of Plaintiff did not support her symptom testimony. A 2011 MRI showed only early disc desiccation in Plaintiff's lower back with a small posterior annular tear and minimal right paracentral disc bulge. Tr. 319. Likewise, the September 2013 nerve conduction study showed no abnormality in the lower right extremity. Tr. 603. When Dr. Andrea Marshall examined Plaintiff on July 6, 2013, her tests showed that Plaintiff was very agile and supple and that she had no pain response during several activities involving use of her back. Tr. 392–93. Dr. Marshall found only tenderness in the right L5-S1 area. Tr. 293. Moreover, as discussed in greater detail below, Dr. Willey's findings that were consistent with Plaintiff's testimony were based on Plaintiff's reports rather than Dr. Willey's examinations of Plaintiff.

Lastly, the ALJ discounted Plaintiff's symptom testimony based on her activities of daily living. Tr. 28. An ALJ may rely on a plaintiff's activities of daily living to reject the plaintiff's testimony where the two conflict and where participation in the activities indicates a greater degree of functioning than what the plaintiff claims. The ALJ identified several inconsistencies in Plaintiff's testimony. For example, Plaintiff's claim that she could only lift eight pounds was contradicted by her testimony that she can pick up her twenty-month old grandchild. Tr. 68. Her claim that she could only perform minimal household chores was belied by her babysitting and communities service activities. Tr. 28. Plaintiff testified at her administrative hearing that she could only garden for ten minutes at a time. The ALJ noted, however, that Plaintiff previously reported being able to garden for an hour at a time. Tr. 28, 601. Plaintiff's testimony regarding her ability to sit was contradicted by her prior statements that she could go motorcycle riding for two hours on average and was able to ride without limitation. Tr. 69, 41. Further, Plaintiff claimed that she primarily reclined while watching her daughter's sporting events; however, she also testified that she stands most of time at the events. Tr. 53–54, 587. Based on this record, the Court finds that the ALJ satisfied its burden of providing clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective symptom testimony.

## II. Dr. Willey's Medical Opinion

Dr. Willey had been Plaintiff's treating physician for seventeen years at the time the ALJ's decision was issued. Tr. 24. Dr. Willey opined that Plaintiff's impairments would prevent her from working. Tr. 578–82. The ALJ accorded Dr. Willey's opinion little weight and determined that, notwithstanding Plaintiff's impairments, she could perform a limited range of light work with certain exertional limitations. Tr. 29–30.

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison*, 759 F.3d at 1012. Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject that opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In this case, the ALJ must give specific and legitimate reasons for discounting Dr. Willey's opinion because it is contracted by the opinion of an examining doctor.

Dr. Willey wrote that Plaintiff was incapable of working "due to the severe amount of pain and discomfort that she suffers from." Tr. 375. Dr. Willey opined that Plaintiff's chronic pain level was three to four on a scale of ten. Tr. 579. Plaintiff could not "do anything for more than one hour" without needing rest. Tr. 579. Plaintiff was limited to occasionally lifting ten pounds and frequently lifting no weight; standing and/or walking for less than two hours in an eight-hour day; continuously standing/walking for no more than one hour; sitting less than two hours in an eight-hour day; and either no or less than one hour of continuous sitting. Tr. 579.

Additionally, Dr. Willey opined that Plaintiff was limited to only occasional pushing/pulling of five pounds, and that she could not do any overhead pulling or reaching. Tr. 580. Plaintiff could not use her fine or gross motor functions for more than one hour. She was also limited to no crouching or climbing. Tr. 580.

The ALJ accorded Dr. Willey's opinion "little weight" because it was: contradicted by the opinions of other medical providers; inconsistent with objective medical evidence; based on Plaintiff's discredited complaints; and inconsistent with Plaintiff's activities of daily living.

The ALJ found that Dr. Willey's opinion was inconsistent with the opinion of examining physician Dr. Marshall. Additionally, state-agency reviewing physicians Neal Berner and Roy Brown opined that Plaintiff had a greater level of functioning than what Dr. Willey claimed. Tr. 94, 107–110. The ALJ determined that those providers' opinions, rather than Dr. Willey's, were entitled to significant weight. Tr. 31.

Dr. Marshall's findings based on her July 6, 2013 examination of Plaintiff contradicted Dr. Willey's opinion. For example, Dr. Marshall observed that Plaintiff easily transferred from her chair to the examination table, sat comfortably, and had no difficulty walking. Tr. 390. Dr. Willey wrote: "[Plaintiff] [was] able to complete heel-toe, tandem gait, hopping, and squatting. Romberg [was] normal." Tr. 391. Plaintiff's gross and fine motor skills were in tact with "no evidence of diminution of function with repetition." Tr. 391. Dr. Marshall's general findings were as follows:

> There is mild paravertebral muscle tenderness at the area of L5-S1 with palpation. No crepitus, effusions, deformities, or trigger point elicited. Claimant is very agile and supple. During the [range of motion] activity she was able to bring her knee all the way to the chest without discomfort. No pain response – grimacing, cinching, etc- noted during activities. Unable to palpate any bony deformity in the spine but did elicit tenderness the right L5-S1 area as mentioned before.

13 - OPINION & ORDER

Tr. 392–93.

Based on the examination above, Dr. Marshall opined that Plaintiff has the functional capacity to: stand and walk up to six hours in an eight-hour day; sit without limitation; and lift and carry twenty pounds occasionally and ten pounds. Tr. 393. Regarding postural limitations, Plaintiff could frequently climb, balance, stoop, kneel, crouch, or crawl. *Id.* There were no manipulative limitations in reaching, handling, fingering, or feeling. *Id.* Lastly, Dr. Marshall assessed that Plaintiff had no workplace environmental limitations. *Id.* Based on this record, the ALJ gave specific and legitimate reasons for according Dr. Marshall's opinion greater weight than Dr. Willey's. In weighing these opinions, the ALJ satisfied the "substantial evidence" requirement by "setting out a detailed a thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012.

The ALJ also gave significant weight to the opinions of state-agency physicians. Tr. 31. "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). However, such opinions may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Id.* at 600. Dr. Berner opined that Plaintiff could: occasionally lift twenty pounds, frequently lift ten pounds; stand and walk for six hours of an eight-hour days; sit for six hours of an eight-hour day; and push and/or pull without limitation. Tr. 108. Likewise, Dr. Brown gave the same functional assessments regarding Plaintiff's capacities for standing, walking, sitting, and pushing/pulling. Tr. 108. Regarding Plaintiff's postural limitations, Dr. Brown opined that she was not limited in ramp climbing or balancing, and that she was limited to frequent ladder climbing, stooping, kneeling, crouching, and crawling. Tr. 109–110.  Dr. Brown

explained that his opinion was consistent with medical evidence, including, minimal MRI findings, normal gait and heel-toe tests, the lack of objective indicia of impairments, minimal muscle spasms, and Plaintiff's activities of daily living. Tr. 110. Accordingly, in weighing medical opinions, the ALJ properly relied on the opinions of state-agency non-examining doctors.

The ALJ found that Dr. Willey's opinion was contradicted by objective medical evidence in the record. Tr. 30. It is a specific and legitimate reason to discredit a physician's opinion when the opinion is unsupported by clinical findings or inconsistent with the physician's own treatment notes. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti*, 533 F.3d at 1041; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Here, the medical record showed that Plaintiff received only conservative treatment for her back condition and her pain levels were stable with medication. Tr. 30. Plaintiff's condition had improved with acupuncture treatment and use of the TENS unit. Tr. 373–81. Further, MRI results, a nerve conduction study, and gait and straight leg tests produced negative results or showed only minimal irregularities. Tr. 30, 311–12, 360–61, 365–66, 381, 419, 603. Once more, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Willey's opinion.

The ALJ also found that Dr. Willey's opinion was based almost entirely on Plaintiff's subjective complaints rather than on his own examinations of Plaintiff. Tr. 30. A specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is based on the claimant's subjective complaints, which the ALJ properly discredited. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). In Dr. Willey's treatment notes he consistently cites to Plaintiff's subjective complaints as the source of his assessments. Tr. 373–81, 587–88, 592–98. When Dr.

Willey applied objective medical diagnostic techniques, his findings were minimal. Tr. 360, 381, 491. Based on this record, the ALJ properly weighed the medical evidence to conclude that Dr. Willey's opinion was unsupported by clinical findings and primarily relied on Plaintiff's subjective complaints.

Additionally, the ALJ gave Dr. Willey's opinion less weight because it was inconsistent with Plaintiff's activities of daily living. Inconsistency between a treating provider's opinion and a plaintiff's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Dr. Willey opined that Plaintiff could not lift more than five pounds; however, she testified that she regularly lifted her grandson. Tr. 419, 592. In further example, Dr. Willey's functional assessment that Plaintiff could not sit continually for more than one hour was contradicted by Plaintiff's testimony that she can ride on the back of a motorcycle for two hours at a time or "as she wishes." Tr. 72, 592–93.

Based on the foregoing, the Court concludes that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record sufficient to discount the opinion of treating physician Dr. Willey.

## CONCLUSION

The Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

Dated this ___6___ day of ___July___, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge